WILLOUGHBY & ASSOCIATES
W. ANTHONY WILLOUGHBY, ESQ., SBN 137503
JASON J. BUCCAT, ESQ., SBN 255660
200 Corporate Pointe, Suite 495
Culver City, California 90230
Tel: (310) 642-0600
Fax: (310) 642-4710

Attorneys for Defendant,
DIAMOND CONTRACT SERVICES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Maria Barrios | CASE NO.: CV-07-3500 ER (FMOX) |
| Plaintiff, | **DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND AMENDED MOTION FOR ATTORNEY'S FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF W. ANTHONY WILLOUGHBY** |
| vs. | |
| Diamond Contract Services, Inc., | |
| Defendant. | Honorable Consuelo Marshall |
| | Date:        May 7, 2012<br>Time:        9:00 a.m.<br>Dept:        2 |
| | [Defendant's Objections to Plaintiff's Submitted Billing for Consideration for an Award of Attorney's Fee's Filed Concurrently therewith] |

1

**TO ALL INTERESTED PARTIES HEREIN AND TO THEIR ATTORNEY(S) OF RECORD:**

COMES NOW Defendant, Diamond Contract Services, Inc., by and through its attorneys of record, Willoughby & Associates, who hereby submit its Opposition to the Second Amended Motion for Attorney's Fees in the Amount of $249,914.00 and Costs in the Amount of $29,347.69 filed by Plaintiff Maria Barrios on the grounds that the attorney's fees mentioned above are unreasonable as to Plaintiff's attorney's hourly rate and hours spent, especially in light of the total judgment of $8,500.00 awarded to Plaintiff after trial.

This Opposition will be based on the attached memorandum of points and authorities, upon such oral argument and/or documentary evidence presented to the Court at the time of the hearing on this matter.

DATED: April 9, 2012                    Respectfully submitted,

                                        WILLOUGHBY & ASSOCIATES


                                        By: _____
                                        JASON J. BUCCAT, ESQ.
                                        Attorney for Defendant
                                        DIAMOND CONTRACT SERVICES, INC

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S FIRST AMENDED OPPOSITION TO PLAINTIFF'S FIRST AMENDED MOTION FOR ATTORNEY'S FEES AND COSTS

### I.

### INTRODUCTION

Not only are the courts the gateway to justice, but also they serve to instill and preserve justice for all parties, as well as eradicate all injustice before the courts. And in these economic times, fact is that injustice is borne out of greed just as much as greed itself incites injustice. This case, as evidenced by Plaintiff Counsel's outrageous demand for attorney's fees of **$305,737.50** despite a judgment of only $8,500.00 is a perfect demonstration of the injustice that greed propagates, and without intervention from this Court, of greed's perpetuation of injustice.

Plaintiff's lead counsel, Craig Ackermann made his true intentions for this case known during the deposition of Rosita Odom, Defendant's person most knowledgeable. Mr. Ackermann boldly stated that he was going to "take this company (Defendant Diamond Contract Services, Inc.) down." Mr. Ackermmann then best summarized the issue at hand on the first day of trial. In response to Judge Real's effort to resolve the case before trial, Counsel stated on the record that the obstacle to resolving this case was attorney's fees. And under that premise, Plaintiff's Counsel proceeded to trial. Despite a judgment of less than $10,000.00, Counsel now seeks **$305,737.50** in fees. It is time to eradicate this proposed injustice.

## II.

## SUMMARY OF RELEVANT FACTS

Plaintiff began this case with allegations of both sexual harassment and wrongful termination on the part of Defendant Diamond Contract Services, Inc. However, because it was discovered that Defendant could not be liable for sexual harassment, the only issue left at trial was that of wrongful termination.  By all accounts, this was not a complex or difficult case.  The only issue was wrongful termination, and Defendant conceded that Plaintiff's damages were approximately six weeks of pay.  Any evidence of emotional/compensatory damage was so sparse that a rebuttal expert was not even necessary.  In fact, after two days of trial, on November 6, 2008, the jury returned a verdict in line with Defendant's concessions and assertions - $2100 to Plaintiff for lost wages, and $6,400 for compensatory damages, for a total of **$8,500**.  Plaintiff's Counsel is now asking this Court for a whopping **$279,261.69** in attorney's fees and costs.  That is astonishingly **33 times** the amount of Plaintiff's total recovery even *after* taking a 20% reduction from **$305,737.50**.

Plaintiff Counsel's strategy in this case, as evidence below, was to first attempt t o extort a large settlement early without providing any justification or basis for Plaintiff's first demand; and if that failed, build up and pad litigation fees and costs without oversight and make an end run for the inflated fees after verdict.

2

**Settlement**

Despite Plaintiff's Counsel's assertions regarding settling this case, Defendant's were never opposed to resolving this case absent trial. Instead, Defendant, rightfully protecting its own interest, sought a fair and *reasonable* settlement. Defendant's counsel proceeded accordingly. Again, the obstacle to resolution was attorney's fees for Plaintiff.

And so it was that on February 15, 2006 – a mere two days after being retained – Plaintiff's counsel demanded that Defendant settle the matter without providing Defendant an opportunity to investigate the merits of Plaintiff's claims for sexual harassment and wrongful termination. Under that framework, Plaintiff demanded that Defendant blindly offer up $10,000 as an "initial offer" and that Plaintiff would "counter-offer" at $80,000. Then, the parties could mediate in that range. Two components are noteworthy: First, Plaintiff provided no basis for the figures it demanded be in play (Plaintiff did not provide any statement of damages, treatment bills, or lost wages amount); and second, Plaintiff's framework was in the context of claims for *both* sexual harassment *and* wrongful termination. (At trial the only issue was damages and it was undisputed that Plaintiff's actual lost wages totaled $4,500 for six weeks of unemployment.)

3

With respect to Plaintiff's spurious allegations of sexual harassment, Diamond at all times maintained and continues to maintain a strong policy against sexual harassment. Defendant provides yearly training for all supervisors and substantial follow up. In fact, Defendant provided evidence of this to Plaintiff. Therefore, Defendant was surprised at Plaintiff's allegations, and did not believe them. A cursory review of Ms. Barrios' allegations and the facts surrounding them revealed that there was no merit to the claim. Thus, Defendant was always willing to settle Plaintiff's claims of wrongful termination for the value of the claim. When the investigation revealed she had obtained employment six weeks later, her damages were capped.

Defendant declined to enter into negotiations without first investigating the matter. After a thorough investigation of the matter had taken place, Defendant offered to settle this case on multiple occasions for a fair and reasonable amount. Plaintiff refused to settle at each instance. Plaintiff then withdrew her meritless claim of sexual harassment and thereafter, Plaintiff's counsel affirmed that Plaintiff's maximum damages for wrongful termination were $13,000.

Bearing those facts in mind, on March 25, 2008, Defendant generously offered to settle for $45,000 at mediation. Plaintiff summarily rejected the offer. On July 23, 2008, Defendant offered $50,000 for full and final settlement pursuant

4

to Federal Rule of Civil Procedure Rule 68. Plaintiff also rejected that offered because Plaintiff has supposedly already expended a conscious-shocking $149,451.50 in fees and $15,196.87 in costs despite the fact that Plaintiff's "initial demand" was $80,000.

**Honorable Manuel Real's Instructions to Settle**

On the first day of trial, Judge Real correctly admonished Plaintiff's Counsel that this case was neither complex nor complex nor difficult, and instructed the parties to attempt to reach a settlement. The following exchange demonstrates Plaintiff's insistence on going to trial simply for attorney's fees sake:

> THE COURT: It didn't seem like much controversy here....So there is only the retaliation...do you want more time to talk?
> DEFENSE COUNSEL: We are always open to negotiation Your Honor.
> THE COURT: All right. Because there is not much money involved here either, Counsel. There is not much money involved.
> PLAINTIFF'S COUNSEL: That's true, Your Honor. At the very beginning of this case we made a demand under six figures for the case and probably would have taken $50,000.00.
> THE COURT: It's not even two figures, Counsel. Basically...it is six months of loss of earnings, if any....No punitives here.

Excerpt of Record on Appeal, Volume III, pages 382-383, attached hereto as Exhibit A.

Per Judge Real's instructions, Defendant again tried to reach a fair settlement, which was rejected by Plaintiff's Counsel. Judge Real's assessment of

5

the case value certainly was not more than $100,000, Plaintiff simply did not entertain any further offers.  Defendant even offered $75,000 to Plaintiff after Judge Real gave its assessment and stated there would be no punitive damages. Standing in the way of an amicable resolution was Plaintiff's Counsel.

**Court Decorum and Plaintiff's Counsel's Expertise and Skill**

Throughout the course of the trial, Plaintiff's counsel failed to adhere to and conform to even the most elementary of court decorum.  Counsel demonstrated such lack of respect by failing to either stand or use the lectern on the first day of trial.  Counsel also allowed his clerk (a non-law student, let alone a non-attorney) to cross the bar and sit at counsel table.   Moreover, Counsel repeatedly challenged Judge Real's authority to the point that Judge Real was on the verge of declaring a mistrial because of counsel's ranting and potential poisoning of the jury.  (Exhibit A, page 447).  For example, while the jury was seated, learned counsel stated in open court that he felt like was being treated unfairly.  (Id.)  Although he was admonished, counsel continued and questioned, "Isn't this where justice takes place"?  (Id.)  Counsel even invoked God when he told Honorable Judge Real that "God makes the rulings…And you're supposed to apply the law."   (Id.)

**Plaintiff's Damages**

Opposition to Second Amended Motion for Attorney's Fees and Costs

On November 5, 2008, the second day of trial, Plaintiff called her expert, Dr. Rappaport to testify. (Exhibit A, pages 340-356). Dr. Rappaport's testimony provided nothing to the jury for determining any damages. (Id.) Dr. Rappaport gave no testimony regarding any emotional distress as a result of Plaintiff's wrongful termination. (Id.) Furthermore, there was no testimony that Dr. Rappaport performed any diagnostic tests regarding personality or emotional disorders or conditions. (Id.) And there was no testimony that Dr. Rappaport reviewed Plaintiff's medical records. (Id.) All that Dr. Rappaport did was examine Plaintiff one time almost two years after she was terminated. (Id.) Dr. Rappaport's testimony was so limited and sparse that there was simply no need for Defendant to call its rebuttal witness, which would have further wasted judicial resources and economy.

On November 5, 2008, during closing argument of trial, Defendant argued to the jury that Plaintiff's lost wages were approximately $2000. (Id. at page 312). On November 6, 2008, the jury returned a verdict for Plaintiff in the amount of $2100 for lost wages, as Defendant's counsel previously argued, and compensatory damages in the amount of $6,400. (Id. at page 278).

**Motion for Attorney's Fees and Costs**

7

On November 21, 2008, Plaintiff filed her first amended motion for attorney's fees and costs.   On December 1, 2008, Defendant filed its Opposition to Plaintiff's motion for fees.  On December 10, 2008, Defendant filed its First Amended Opposition to fees asserting, *inter alia*, that Plaintiff's fees should be denied their entirety, or at minimum substantially reduced because the fees were unreasonable; expert costs were excessive, unnecessary, and unreasonable; counsel inappropriately shared attorney's fees with a non-attorney; and there was a public policy shift towards a proportionality approach.

On December 15, 2008, Judge Real continued the hearing on Plaintiff's motion for attorney's fees to February 2, 2009.  Given the spirited colloquy between Judge Real and Plaintiff's counsel, presumably the Court continued the hearing to allow Counsel to reassess his position regarding the outrageous amount in attorney's fees that he sought.  Thus, Judge Real provided Plaintiff with the opportunity submit a revised motion.  Yet, Plaintiff submitted no further pleadings.  Rather, Plaintiff's counsel, via an email sent to Defendant's counsel on the evening of December 15, 2008, threatened Defendant with an appeal stating that Judge Real's ruling, "whatever it [was]" would not stand on appeal.   (Excerpt of Record on Appeal, Vol.  II, page 26, attached hereto as Exhibit B.)  Contrary to Plaintiff's assertions, Plaintiff counsel's email was not written in the context of a

confidential settlement negotiation.  There was no subject to the email; there was
no mention of settlement in the body of the email; and there was no admonishment
that it was a confidential settlement communication.  (Id.)  Instead, Plaintiff
remained obdurate with her request for attorney's fees that were over **31 times** the
judgment.

Between the original December 15, 2008 hearing and the new hearing date
of February 2, 2009, any settlement discussions regarding attorney's fees were
fruitless.  This was based in large part because Plaintiff, without explanation or
justification, demanded that settlement was possible *if and only if* Defendant
presented $100,000 in attorney's fees for a judgment of $8,500.  Effectively,
Plaintiff had no true desire to settle the matter for a reasonable amount.

On February 2, 2009, Judge Real denied attorney's fees *in toto*, and properly
adjusted costs to $5,700.15 given Defendant's Rule 68 offer.  Specifically, the
Court stated that special circumstances justified the total denial of fees, and that
the totality of factors in this matter constituted the special circumstances.

**Remand**

On December 13, 2011, the Ninth Circuit Court of Appeal reversed and
remanded Judge Real's ruling only for ***proper fee calculation*** before a different
judge.  (See Order, attached as Exhibit C). The Ninth Circuit reversed only on the

issues of Judge Real determining that there was were ethical violations on the part

of Plaintiff's Counsel and the Judge Real did not adequately determine whether

Plaintiff's fees were reasonable.  *Id.*  However, the Ninth Circuit made no ruling

on whether Plaintiff's fees were reasonable or whether special circumstances

existed to deny fees in total.  *Id.*  Those issues, and only those issues are now

before this Court.  Because the Ninth Circuit only remanded the matter for a

"proper fee calculation" Plaintiff is estopped from challenging Judge Real's

decision regarding costs.

**Plaintiff's Second Amended Motion For Fees**

When the obstacle to resolving a legal matter is that of attorney's fees, the

goals of the justice system are abandoned.  The ends of justice are lost.  This is

especially true in the field of Civil Rights where the goal is to correct a wrong, not

to create windfalls for attorneys and their clients.  Yet, that is the state of affairs in

this instant matter.

Plaintiff still insists on excessive and unconscionable attorney's fees.  On

March 23, 2012, Plaintiff filed her Second Amended Motion for Attorney's fees

and costs.  Plaintiff's Counsel is now asking this Court for a whopping

**$279,261.69** in attorney's fees and costs.  That is astonishingly **33 times** the

amount of Plaintiff's total recovery even *after* taking a 20% reduction from just

10

over **$305,000.00**.   Plaintiff's Counsel also attempts to retroactively apply his current rate (equally absurd) of $550/hour instead of his previous rate $400/hour at the time Plaintiff made her first application for fees.

This attitude of complete disregard for common sense and decency by Plaintiff's counsel has been a strain on the judicial system, a waste of judicial resources, and an affront to justice.  No justice would be served with such an award.  Not only would such an award be unjust, but it would only serve to proliferate, and be a catalyst for greedy attorney barbs, and characterizations. There is nothing reasonable about $279,261.69 in fees and costs for an $8,500 award.  Nor does it give credibility to the justice system. Instead, it imbrues to the practice of law and degrades the integrity American jurisprudence.   And given the still apparent special circumstances here (*de minimus* result coupled with exorbitant fees), an award of attorney's fees would certainly be unjust.  Plaintiff's Counsel should not be rewarded with a windfall for engaging in tactics to drive up fees and costs.  Therefore, Defendant now opposes Plaintiff's motion for attorney's fees and costs.

///

///

## III.

# LEGAL ARGUMENT

## A.

### BECAUSE PLAINTIFF COUNSEL'S FEE REQUEST IS UNREASONABLY INFLATED COUPLED WITH PLAINTIFF'S LIMITED SUCCESS, SPECIAL CIRCUMSTANCES EXIST TO DENY FEES ALTOGETHER

As a threshold matter, Plaintiff makes Federal (Title VII) and California state (FEHA) claims for wrongful termination. As articulated below, under both federal and state law, a prevailing party would normally be reasonable attorney fees absent the existence of special circumstances to deny or reduce fees. (See *Hensley v. Eckerhart* (1983) 461 U.S. 424, 440; *Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231; *Serrano v. Unruh* (1982) 32 Cal.3d 621, 635, 186 Cal.Rptr. 754, 652 P.2d 985; accord, *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1137, 104 Cal.Rptr.2d 377, 17 P.3d 735; *Chavez v. City of Los Angeles,* (2010) 223 P.3d 41.) Here, because Plaintiff has made a state claim, state law applies. And because Title VII and FEHA are virtually identical, state law allowing for a complete denial or reduction fees is directly applicable.

Plaintiff's requests for attorney's fees should be denied in its entirety because special circumstances exist to warrant a complete denial. When a plaintiff achieves only limited success on her claims, it is entirely within the trial court's discretion to deny all attorney's fees to a prevailing party because a special circumstance exists, such as the plaintiff's attorney fee request being "grossly inflated when considered in the light of the single claim on which plaintiff succeeded." *Chavez v. City of Los Angeles,* (2010) 223 P.3d 41, 54. In *Chavez,* the California Supreme Court upheld the trial court's denial of plaintiff's request for attorney's fees in the amount of $870,935.50 in its entirety because plaintiff only had limited success on a single claim. *Id.*

Interestingly, prior to the California Supreme Court's ruling in *Chavez,* Plaintiff herself explicitly relied on *Chavez* because, as Plaintiff has asserted, the

12

issue of "whether the amount of damages a prevailing plaintiff has any place in determining the size of a fee award in a FEHA case" is "identical to" the instant case. (See Plaintiff's Reply Brief on Appeal, page 12, attached hereto as Exhibit D). In fact, Plaintiff stated that *Chavez* would "provide definitive guidance" in this case. *Id.* Defendant agrees wholeheartedly. However, since the California Supreme Court ruled that the award a plaintiff recovers can and should be considered when determining attorney's fees, Plaintiff has conspicuously omitted any mention of *Chavez* in her moving papers. The reason is clear: applying *Chavez* in the instant matter would result in a denial of Plaintiff's fee request. Indeed, that is the correct conclusion.

In *Chavez*, the plaintiff made a FEHA claim based on discrimination and retaliation. *Chavez* at 47. At trial, plaintiff prevailed only on the retaliation claim and was awarded $1,500 in economic damages, and $10,000 in compensatory damages. *Id.* at 48. Plaintiff then filed motions for costs in the amount of $13,144.26, and attorney's fees in th amount of $436,602.75 based on plaintiff's attorney expending 1,851.43 hours on the case. *Id.* The California Supreme Court upheld the trial court's denial of attorney fees because plaintiff "'overreached and outrageously inflated his fee request.'" *Id.* Specifically, the Court considered the lack of damages compared to the fee request. The Court agreed that plaintiff's evidence in support of his FEHA claim was "seriously deficient" on the element of damages, and that even evidence regarding economic damages was "sparse." *Id.* at 54. In its analysis the Court further observed that:

> Under federal law, when determining a prevailing plaintiff's attorney fee in an action for violation of civil rights (42 U.S.C. § 1988), the extent of a plaintiff's success is a crucial factor. (*Hensley v. Eckerhart* (1983) 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40.) If a plaintiff has prevailed on some claims but not others, fees are not awarded for time spent litigating claims unrelated to the successful claims, and the trial court "should award only that amount of fees that is reasonable in relation to the results obtained." (*Ibid.*) Although attorney fees need not be strictly proportionate to the damages recovered (*Riverside v. Rivera* (1986) 477

13

U.S. 561, 574, 106 S.Ct. 2686, 91 L.Ed.2d 466), "[w]hen a plaintiff
recovers only nominal damages because of his failure to prove an
essential element of his claim for monetary relief [citation], the only
reasonable fee is usually no fee at all" (*Farrar v. Hobby* (1992) 506 U.S.
103, 115, 113 S.Ct. 566, 121 L.Ed.2d 494).

*Id.* at 53.

Additionally, the Court reiterated that "'under state law as well as federal law, a reduced fee award is appropriate when a claimant achieves only limited success" (*Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 249, 261 Cal.Rptr. 520; accord, *Feminist Women's Health Center v. Blythe* (1995) 32 Cal.App.4th 1641, 1674, 39 Cal.Rptr.2d 189; see also *Harrington v. Payroll Entertainment Services, Inc.* (2008) 160 Cal.App.4th 589, 594, 72 Cal.Rptr.3d 922).'" *Id.* at 54. Most importantly, the Court emphasized that "'A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 635, 186 Cal.Rptr. 754, 652 P.2d 985; accord, *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1137, 104 Cal.Rptr.2d 377, 17 P.3d 735.)'" *Id.*

In this case, Plaintiff cannot deny that the facts and issues in *Chavez* are directly relevant to and practically on all fours with the facts and issues in this case. Both cases involve FEHA claims. Here, like *Chavez*, Plaintiff initially sought damages for multiple causes of action (sexual harassment and wrongful termination), but only prevailed on a solitary issue. Like *Chavez*, Plaintiff's evidence of economic damages was weak, and the evidence for compensatory damages was equally sparse. In fact, as to economic damages, Plaintiff recovered essentially the amount that *Defense Counsel* argued for - $2100.00. And as to compensatory damages, Plaintiff's evidence of distress was so lacking that it was not even necessary for Defendant to call a rebuttal witness; and Plaintiff was awarded essentially the amount in noneconomic damages that Defendant argued

for - $6400.00. Most similarly, just as in *Chavez*, Plaintiff in this case has made an outrageous claim for close to $300,000.00 despite a jury award of only $8500.00. Therefore, just as the Court in *Chavez* determined that plaintiff's requested fees were excessive in light of plaintiff's limited success, so too should this Court **deny** Plaintiff's request for fees because Plaintiff experienced limited success on only one claim, received a nominal award, and now makes an ridiculous request for fees amounting to 33 times the jury verdict.

## B.

### ALTERNATIVELY, THE ATTORNEYS' FEES SOUGHT BY PLAINTIFF'S COUNSEL ARE UNREASONABLE AND SHOULD BE REDUCED

As established above, it is within this Court's discretion and entirely reasonable to deny Plaintiff's request for fees outright. Alternatively, as also established above, even if Plaintiff can recover attorney's fees in this case, that amount should be greatly reduced given the unreasonableness and sheer lack of credibility of Plaintiff's request.

For an attorney with considerable experience and who has exclusively practiced employment law since 1997, as lead counsel for Plaintiff asserts he has, this case for wrongful termination is neither complicated nor complex. Plaintiff was terminated and was then out of work for six weeks. The only issue was damages. Thus, the question is begged: How much time and preparation does a skilled and well-seasoned employment law attorney require to argue for to six

15

weeks of pay?  Plaintiff's Counsel's Answer: 773.85 hours and $305,737.50 in attorney's fees alone *before* any reduction to reach an $8,500 award.  That hardly seems reasonable or credible.  To the contrary, it is obscene and an insult the integrity of American jurisprudence.

California Government Code section 12965(b) states, "In actions brought under [the FEHA], the court, in its discretion, *may* award to the prevailing party *reasonable* attorneys' fees ...." Gov't Code § 12965(b)  (emphasis added).

> "California law commits the determination of reasonable attorneys' fees to the discretion of the trial courts." *Beaty v. BET Holdings, Inc.,* 222 F.3d 607, 609 (9th Cir.2000). To assess reasonable attorney fees, a court begins "with a touchstone or lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney ... involved in the presentation of the case.' " *Ketchum v. Moses,* 24 Cal.4th 1122, 1131–32, 104 Cal.Rptr.2d 377, 17 P.3d 735 (2001) (quoting *Serrano v. Priest,* 20 Cal.3d 25, 48, 141 Cal.Rptr. 315, 569 P.2d 1303 (1977)). "[T]rial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." *Id.* at 1132, 104 Cal.Rptr.2d 377, 17 P.3d 735. A trial court may "reduce the award or deny one altogether" if the fee request "appears unreasonably inflated." *Serrano v. Unruh,* 32 Cal.3d 621, 635, 186 Cal.Rptr. 754, 652 P.2d 985 (1982); *see also PLCM Group, Inc. v. Drexler,* 22 Cal.4th 1084, 1095, 95 Cal.Rptr.2d 198, 997 P.2d 511 (2000) (allowing for an adjustment of the lodestar figure, "based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided"). Although reasonable fees are not measured as "a percentage of the plaintiff's recovery," *Weeks v. Baker & McKenzie,* 63 Cal.App.4th 1128, 1175, 74 Cal.Rptr.2d 510 (1998), "under state law as well as federal law, a reduced fee award is appropriate when a claimant achieves only limited success,"

*Sokolow v. County of San Mateo,* 213 Cal.App.3d 231, 249, 261 Cal.Rptr. 520 (1989).

*Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1023 (N.D. Cal. 2010)

Furthermore, in arriving at a reasonable amount, an award of fees as costs must bear a "reasonable relationship" to the substantive recovery. *Bakkebo v Municipal Court*, 124 Cal. App. 3d 229 (1981).

Finally, to enable the Court to determine what amount in attorneys' should be awarded, an attorney must present "evidence, documentary and oral, of the services actually performed; and expert opinion...as to what would be a reasonable fee for such services." *Martino v. Denevi,* 182 Cal. App. 3d 553, 558-59 (1986). At all times, the Court has the discretion to adjust the lodestar amount downward or deny fees altogether. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). "The experienced trial judge is the best judge of the value of professional services rendered in his court...." *Priest*, 20 Cal. 3d at 49, 141 Cal.Rptr, 315, 569

**1.     The Number of Hours Billed by Plaintiff's Counsel Are Unreasonable.**

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court stated that: (i) a fee applicant should demonstrate "billing judgment" in submitting their fee request; (ii) the fee applicant should exclude from their fee application any time charges that are "excessive, redundant, or otherwise unnecessary; and (iii) hours that are not properly billed to one's client are not

17

1    properly billed to one's adversary pursuant to statutory authority. *Id.* At 434; see

2

3    also *Tarver v. State Bar*, 37 Cal. 3d 122, 134 (1984) (holding that an attorney

4    should not be able to charge or collect an "unconscionable fee - a fee which is so

5    exorbitant and wholly disproportionate to the services performed as to shock the

6

7    conscience").

8       Similarly, in *Serrano v. Unruh*, 32 Cal. 3d 621 (1982), the court cited with

9    approval a federal case encouraging a complete denial of fees where the fee

10

11    request was unreasonably excessive:

12       If....the Court were required to award a reasonable fee when an
       outrageously unreasonable one has been asked for, claimants

13       would be encouraged to make unreasonable demands,
       knowing that the only unfavorable consequence of such misconduct

14       would be reduction of their fee to what they should have asked in the
       first place.  To discourage such greed, a severer reaction is needful.

15

16

17    *Id.* At 635 (citation omitted).

18       Here, Plaintiff's Counsel's fee request of $305,737.50 is clearly

19

20    unconscionable given that it in no way bears a reasonable relationship to the

21    $8,500.00 damages award they recovered for their client. (See *Bakkebo v.*

22

23    *Municipal Court*, 124 Cal. App. 3d 229 (1981).  In establishing that they have

24    used "billing judgment" in submitting their fee request, as the Supreme Court

25    required in *Hensley,* Plaintiff's Counsel should have, at the very least, performed a

26

27    self-review of their billing records to eliminate any charges that are "redundant,

28

1   excessive, or unnecessary," or which are not properly billed to one's adversary or

2   client. (See, e.g. *U.S. v. City and County of San Francisco*, 748 F. Supp. 1416

3
4   (N.D. Cal. 1990)).  Yet, there are simply no statements from Mr. Ackermann's

5   declaration that explain how, or whether he examined his own or his staff's billing

6
7   records prior to submitting the fee request, or whether he made any reductions in

8   billing.  Given this lack of judgment, especially in light of Mr. Ackermann's

9   supposed expertise, the Court should substantially reduce the fees sought by

10  Plaintiff's Counsel.

11

12  **a.    Plaintiff Counsel's Billings are So Obscenely Padded and Inflated That**
        **They Are Stripped of Any Credibility and Reasonableness**
13

14          Upon review of Plaintiff Counsel's billing records in this case, this Court

15  can easily determine that Counsel egregiously padded his billing simply to drive

16
17  up costs.  For example, this Court can simply examine Counsel's billing for

18  correspondence to discover the absurdity of Plaintiff's request.  The following is

19  only a sample of the patently padded billing that Plaintiff produced:
20

21  1.     On February 14, 2006, Plaintiff's Counsel billed 3.1 hours for drafting a

22         demand letter to Defendant's CEO.  See Plaintiff's Exhibit L.  That letter is

23
24         three-pages in length that for the most part regurgitated Plaintiff's position.

25         See Plaintiff's Exhibit E. On February 15, 2006, it appears that Counsel

26         spent another 42 minutes editing his own letter.   This billing amounts to

27

28
                                            19

Counsel operating at a speed of over one hour per page. This is excessive billing even for the newest member of the legal field, let alone an experienced employment law attorney such as Plaintiff's counsel asserts;

2.  On March 22, 2006, Plaintiff's Counsel billed .6 hours for drafting a letter to opposing counsel. See Plaintiff's Exhibit L. However, that letter merely attached documents and inquired about mediation, and is a scant three sentences long, and contains approximately 95 words substantively! See Plaintiff's Exhibit F. That amounts to a seasoned, well-versed employment law expert operating at 11 minutes *per sentence*, or less than *3 words per minute*. Such billing defies all reasonableness;

3.  Similarly, on July 2, 2007, Counsel billed .8 hours for drafting a letter to opposing counsel. See Plaintiff's Exhibit L. Substantively, the letter is less than one page and merely memorializes Plaintiff Counsel's telephone conversation with opposing counsel. See Defendant's Exhibit E. Essentially, Counsel would have this Court believe that it took him 42 minutes to simply draft a memorializing letter. Again, this unacceptable and unreasonable even for a neophyte, let alone for a counsel with Plaintiff Counsel's acumen; and

4.  On July 17, 2007, Plaintiff's Counsel billed .5 hours to draft a letter to

opposing counsel.  See Plaintiff's Exhibit L.  That letter substantively contains *two sentences*: one for acknowledging receipt of documents, and the other for providing dates of availability.  See Defendant's Exhibit F.  Yet, even this most elementary of letters took counsel 30 minutes to complete!  There is nothing credible about Counsel's billings.

The ridiculous padding of hours as demonstrated above is repeated thoroughly in Plaintiff Counsel's submitted hours.  Another example of Plaintiff Counsel's excessive billing is that he billed over 10 hours for only preparing his opening statement on the conceded issue of wrongful termination.  The only dispute was damages.  Defendant more thoroughly addresses its objections to the billing in its Objections to Plaintiff's Submitted Billing in Consideration for an Award of Attorney's Fees, filed concurrently herewith.  Based on the non-credible and excessive billing submitted by Plaintiff's Counsel, the only proper award is either no award at all, or one that is substantially reduced.

**b.    Plaintiff's Counsel Cannot Recover for Intra-Office Conferences or for Unnecessary/Duplicative Time Entries.**

As stated above, Defendant states its objections to Plaintiff's billing in Defendant's Objections to Plaintiff's Submitted Billing in Consideration for an Award of Attorney's Fees, filed concurrently herewith.  Based on the billings submitted by Plaintiff's Counsel, of the 773.85 hours billed, in excess of 80 hours

21

were spent by Ackermann & Tilajef staff conferring with each other and/or with

Plaintiff, resulting in a double-billing effect.  As was held in *Welch v. Metro. Life

Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007), the court can reasonably reduce hours

spent for intra-office conferences.  Plaintiff's Counsel would certainly not ever bill

their own client for such tasks and, as the Court explained in *Hensley*, hours that

are not properly billed to one's client are not properly billed to one's adversary

pursuant to statutory authority.  *Hensley*, 461 U.S. at 434.

Moreover, given Plaintiff's Counsel's claims that Mr. Ackermann is an

well-seasoned employment law attorney, who has represented "hundreds" of

individuals - thus warranting his past $400/hour rate and current $550/hour rate;

and that Plaintiff Counsel's staff is highly competent given their backgrounds -

thus warranting their $300/hour rate for associates and $150/hour rate for a non-

law school clerk, it was unnecessary for Plaintiff's Counsel to have conferred with

each other in excess of 80 hours throughout the course of this matter.

Furthermore, Plaintiff's Counsel egregiously and unnecessarily drove up

Plaintiff's attorney's fees by sending multiple (and unnecessary) attendants to

mediation, depositions, and trial.  For example, Plaintiff's Counsel billed for

associate Ms. Hernandez to attend at least three depositions, however, Ms.

Hernandez never took nor defended such depositions - an over-billing of nearly 20

22

hours.  Instead, she was merely a bystander to either Mr. Ackermann or Ms. Tsarovsky.  Perhaps most offensively, Plaintiff's Counsel's billing records include over 75 hours for what was essentially a 15-hour trial at most.  The excessive trial hours were accumulated by Mr. Ackermann bringing in tow Ms. Hernandez and Mr. Mermelstein to court, even though neither had any substantive duties at trial. According to the billing records, Mr. Mermelstein, a non-attorney and non-law student was allowed to sit at counsel table, and simply "attended and observed" and "got lunch."  Thus, Plaintiff was once again inappropriately billed for excessive and duplicative tasks.

In light of Plaintiff's Counsel padded billing and failure to provide persuasive justification for the intra-office meetings, and excessive, unnecessary and duplicative time entries, and in an effort to render Plaintiff's Counsel's fees a bit more reasonable, the Court should, among other things, deduct at least 200 hours from the attorneys' billings.

**c.    Plaintiff's Counsel's Block-Time Entries Are Vague, Ambiguous and Lack the Requisite Specificity for Court Determination**

The time entries that Plaintiff's Counsel submitted in support of their motion for attorney's fees are fraught with inappropriate block entries. Apparently, whenever any of Plaintiff's Counsel performed more than one task in a day, that individual merely provided a cumulative of time spent that day rather

23

than list out time for each particular task.  Such block-billing simply does not provide a clear picture for the Court to analyze whether Plaintiff's Counsel's hours were reasonable and necessary because no exact amount of time was designated for a particular task.  See Exhibits L, M, N, and O to Plaintiff's motion.  Each of Plaintiff's Counsel engaged in this improper billing method.  The following is merely a sample of the inappropriate and unreasonable time entries:

**Avi Mermelstein - Law Clerk:**

| | | |
|---|---|---|
| 7/22/08 | 8.35 hours | e-mailed Pre-trial documents to Mediator Lisa Klerman; printed Opposing Counsel's Pre-trial documents; found and copied relevant correspondence and documents for Reply to Motion to Compel; created timeline of relevant events for Reply to Motion to Compel; reorganized Pleadings folder of case file. |

**Craig Ackermann**

| | | |
|---|---|---|
| 7/24/08 | 11.5 hours | continued work drafting opposition papers to defendant's motions to compel discovery and IME; assembled exhibits related to same; continued drafting declaration in support of opposition; legal research regarding admissibility and/or exclusion from evidence of untimely expert reports under the federal rules; additional work drafting opposition papers and declaration. |

**Tatiana Hernandez**

| | | |
|---|---|---|
| 11/03/08 | 8.5 hours | trial prep; organized trial binder with all trial outlines; prepared Barrios for trial testimony; prepared trial outline for Elder Soriano; prepared proof of service of civil subpoena. |

**Rachelle Tsarovsky**

| | | |
|---|---|---|
| 1/18/08 | 4.5 hours | prepared depo notice for Rule 30(b)(6) deposition; called opposing counsel re: deposition dates; wrote letter to opposing counsel re: same; copied documents and sent letter to Dr. Rappaport enclosing relevant docs. |

Such blocked-time entries are found throughout Plaintiff's Counsel's billing records, and these entries simply cannot give an accurate account of any of Plaintiff's Counsel's time spent.   Moreover, the block-time entries highlight the unnecessary and most likely inflated billing by Plaintiff's counsel.

Therefore, pursuant to California decisions regarding vague, non-specific entries of time, Defendant respectfully requests that this Court reduce Plaintiff's overall attorney's by 35%.  See <u>Californians for Responsible Toxics Management,</u> 211 Cal. App. 3 d 961, 970, 975 (1989) (use of 35% fractional multiplier to reduce claimed fees upheld); <u>Kirsch v. Fleet St. Ltd.,</u> 148 F.3d 149, 173 (2d. Cir. 1998).

**2.     Plaintiff's Counsel's Hourly Rates are Excessive.**

The burden is on the prevailing party to prove the appropriate market rate to be used in calculating the lodestar fee.  According to the Supreme Court in *Blum v. Stenson*:

> [C]ourts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates.  To inform and assist the court in the exercise of its discretion, the burden is no the fee applicant to produce satisfactory evidence - in addition to the attorney's own affidavits - that the request rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  A rate determined in this way is normally deemed to be reasonable, and I s referred to - for convenience - as the prevailing market rate.

25

1    *Blum*, 465 U.S. 886, 896 n. 11 (1984).

2           In determining a reasonable rate for an attorney's services, courts usually
3
4    consider the following: (1) the prevailing rate charged by attorneys of similar skill
5    and experience for comparable legal services in the community; (2) the nature of
6
7    the work performed; and (3) the attorney's customary billing rates. *Serrano v.*
8    *Unruh*, 32 Cal. 3d 621, 643 (1982); *Kerr v. Screen Extras Guild. Inc.,* 526 F. 2d
9    67, 69 (9th Cir. 1975).  Additionally, as at least one court has held, in awarding
10
11   fees in an employment case, the hourly rates must reflect the size of the law firm
12   involved. *Bick v. City of New York*, 1998 U.S. Dist. LEXIS 5542 (S.D.N.Y. 1998)
13
14   (holding that a rate of $275 per hour - not $375 as the plaintiff's counsel had
15   requested - was "reasonable and in keeping with rates awarded in the majority of
16   cases involving solo practitioners and partners in small firms with experience and
17
18   skill of [plaintiff's counsel'"); see also *Gomez v. Gates*, 804 F. Supp. 69, 76 (CD.
19   Cal. 1992) ("For a given type of work, lawyers in large firms charge institutional
20   clients far more per hour than is charged by lawyers of the same skill and
21
22   experience in small firms to individual clients.").

23          In this case, Plaintiff's Counsel attempt to justify their unreasonable high
24   rates by providing declarations from a Michael Eisenberg, Michael Malk, and
25
26   Craig Ackermann.  Yet, the Court should not rely on these declarations in that they
27
28
                                        26

are self-serving and provide no support to Plaintiff's Counsel's billing rates.  For example, rather than survey or compare the rates for various employment law attorneys, Plaintiff's Counsel conveniently has a sample of two attorneys whose rates are even more excessively high that Plaintiff's counsel.  Mr. Eisenberg and Mr. Malk simply come to the conclusion that Mr. Ackermann's rates are reasonable.  Additionally, Mr. Ackermann's declaration merely recounts his own and his staff's academic history, hoping to mask their lack of practical experience.  Though Plaintiff's counsel's academic resumes may speak to their intellect, they neither warrant, justify, nor replace experience required to bill at such excessive rates.

The reality is that Plaintiff Counsel's high rates are incongruent with not only the size Counsel's firm, but also with Counsel's inexperience.  First, the law offices of Ackermann & Tilajeff is undoubtedly a small firm.  It currently has three attorneys (including Mr. Ackermann and Ms. Hernandez); and while this matter was pending, it also employed Ms. Tsarovsky.  While a $550/hour rate might be standard in a large firm, it is inappropriate for a small firm attorney to bill at such a high rate.

Second, while attorney experience and skill may contribute to an increased rate, Mr. Ackermann's own experience and skill does not rise to that level.  That is, based on Mr. Ackermann's own declaration, it is evident that Mr. Ackermann

never first-chaired a Title VII or FEHA trial prior to the instant one.  While he indicates that he second-chaired some cases, there is no indication of what that entailed.  Indeed, Ms. Hernandez "second-chaired" this trial simply by sitting at counsel table.  Yet, Ms. Hernandez neither made any arguments in court nor examined any witnesses.  Perhaps that is the type of "second chairing" that Mr. Ackermann performed.  And, Mr. Ackermann admits that with the exception of this matter, all of his other matters have settled.

Finally, when Plaintiff initially made her application for fees, Counsel requested a rate of $400/hour.  Now incredibly, Counsel wants this Court to apply an increased rate of $550/hour to time already performed without any explanation for the increase.  Plaintiff Counsel's rates and that of his staff whatever they maybe, are excessive.  Counsel's firm is not a large firm that commands such an excessive rate, and Counsel's inexperience does not justify a rate of $550 or even $400/hour.    Therefore, any award for attorney's fees should be substantially reduced.

**3.    Plaintiff's Counsel May Only Be Entitled Fees Accrued Before the July 23, 2008 Rule 68 Offer of Judgment submitted by Defendant.**

As articulated above, Plaintiff's attorney's fees are unreasonable in that the excessive, unnecessary, and duplicative hours have been billed, and Plaintiff's

28

Counsel's hourly rate is excessively high. Thus, such attorney's fees should be reduced accordingly. Additionally, if any attorney's fees are awarded, such fees may only be calculated up to July 23, 2008.

Federal Rule of Civil Procedure, Rule 68 states that if an offer made pursuant to Rule 68 is not accepted, then "If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." *Fed. R. Civ. Proc. 68.*

Here, Defendant offered a judgment pursuant to Rule 68, of $50,000 on July 23, 2008. Plaintiff never accepted the offer, which was certainly reasonable at the time it was offered, as well as on the date of trial. Specifically, in actuality the offer was almost seven times the judgment that Plaintiff ultimately received. Plaintiff was awarded $8,500 at trial. Plaintiff never accepted the offer. Because the actual judgment was significantly less than Defendant's Rule 68 offer, Plaintiff's Counsel's award should be limited to fees incurred before July 23, 2008. Most importantly, based on the arguments articulated above, any award for attorney's fees incurred prior to July 23, 2008 should be significantly reduced.

### a.   Plaintiff's Counsel own value of this case never exceeded $80,000

From the outset of this litigation, Plaintiff's Counsel was well-aware that totally recovery in this case would most likely hover around the $40,000 - $50,000

range.  In fact, Plaintiff's attempted to manipulate it such that Defendant would offer $10,000 and Plaintiff would demand $80,000, and then both parties would proceed to mediation.  See Plaintiff's Exhibit E.  Yet, when that very amount was offered to Plaintiff after Defendant could assess the case, Plaintiff's Counsel rejected to the Rule 68 reasonable offer of $50,000.  Moreover, based on six weeks of pay as elicited at trial, Plaintiff's actual damages, dripping wet totaled only $2,000.

Plaintiff's Counsel did a disservice to their client and should not now be rewarded for such dereliction.  The jury found precisely as Defendant argued - that Plaintiff was only entitled to $2,000 in actual damages and $6,500 for emotional pain.   Yet, had the Rule 68 offer been accepted, Plaintiff would have received $30,000 under the 60-40 agreement between Plaintiff and counsel.  However, despite this potential windfall for Plaintiff, Plaintiff's Counsel doomed their client by proceeding to trial.  Per the jury's decision, by law, Plaintiff's maximum recovery is now only $8,500, which is almost a 75% reduction in what Plaintiff would received pursuant to the Rule 68 offer of judgment.  Therefore, Plaintiff's Counsel should not be rewarded for such a dereliction of duty owed to Plaintiff.

///

///

## C.

## PLAINTIFF IS ESTOPPED FROM CLAIMING COSTS; ALTERNATIVELY, PLAINTIFF'S COSTS REGARDING EXPERT DR. RAPPAPORT ARE EXCESSIVE, UNNECESSARY, AND UNREASONABLE

On December 13, 2011, the Ninth Circuit Court of Appeal reversed and remanded Judge Real's ruling only for ***proper fee calculation*** before a different judge. See Defendant's Exhibit C. The Ninth Circuit reversed only on the issues of Judge Real determining that there was were ethical violations on the part of Plaintiff's Counsel and the Judge Real did not adequately determine whether Plaintiff's fees were reasonable. *Id.* However, the Ninth Circuit did not disturb Judge Real's ruling with respect to costs. *Id.* Because the Ninth Circuit only remanded the matter for a "proper fee calculation" Plaintiff is estopped from challenging Judge Real's decision regarding costs.

Even if the issue of costs could be revisited, this Court should consider the following. Of the $25,163.72 in costs that Plaintiff's Counsel allege they incurred, *more than half* of such costs are attributed to expert witness fees. Specifically, Plaintiff's Counsel contend that they incurred $14,363.66 on expert witness fees. However, as demonstrated at trial, Plaintiff's designated expert was completely unnecessary and unhelpful to the jury in deciding this case. To be sure, the only use for Plaintiff's expert, Dr. Rappaport, was ostensibly to drive-up litigation costs.

31

It is curious that, although Los Angeles is diluted with qualified medical experts, Plaintiff's Counsel ignored such experts. Instead, Plaintiff's Counsel sought an expert outside of Los Angeles County, who "coincidently" charged exorbitant and excessive rates for retention and testimony. In fact, in response to Defendant's efforts to resolve this case before trial, Plaintiff's Counsel stated that the expert had already been paid.

Furthermore, Dr. Rappaport's testimony was simply unhelpful for the jury in determining any damages to Plaintiff. For example, Dr. Rappaport gave no testimony regarding any emotional distress that Plaintiff experienced as a result of having her employment terminated. Additionally, there was absolutely no testimony regarding Dr. Rappaport performing any diagnostic tests regarding personality or emotional disorders or conditions. Finally, there was no testimony that Dr. Rappaport even reviewed any medical records pertaining to Plaintiff. Dr. Rappaport's testimony was simply limited to his own observation of Plaintiff at least one-year after the incident. Without conducting tests or reviewing records, Dr. Rappaport's testimony was completely self-serving and provided no aid to the jurors. Therefore, Dr. Rappaport's testimony was so completely unnecessary and useless that rebuttal testimony was not even warranted. Plaintiff's Counsel should not be awarded costs incurred simply for the sake of driving up litigation costs.

32

## D.

## PUBLIC POLICY SUPPORTS THE CONTINUING SHIFT TO A PROPORTIONALITY APPROACH

There is no doubt that since 2003, courts have moved away from excessively disproportionate awards relative to a plaintiff's actual damages.  For instance, the United States Supreme Court, in <u>State Farm Mutual Insurance Co.  V. Campbell et al.</u> enunciated that punitive award damages should not exceed a single-digit ratio to compensatory damages.  <u>State Farm,</u>  538 U.S. 408 (2003).  This summer, the Supreme Court again reduced the ratio of punitive damages to compensatory damages to 1:1 with respect to maritime cases.  <u>Exxon Shipping Co. v. Baker,</u> 554 U.S. ___ (2008).  Most recently, the highest court in the State of California expressly stated that amount of plaintiff's damages in fact does have a direct bearing on the amount of fees that should be awarded.  *Chavez,* 2010) 223 P.3d 41, 54.

In the same vein, awards for attorney's should not exceed a 5:1 ratio to compensatory damages, and should certainly not a 9:1 ratio.  Yet, despite the Supreme Court's commentary and trend to curb excessive awards, Plaintiff's Counsel asks this court to award them attorney's fees that are *33 times* greater than Plaintiff's recovery.  This Court, especially in light of the facts and arguments, above, should not allow this to occur.  Plaintiff's Counsel's billed hours are excessive and unreasonable; the hourly rate is excessive and incongruous; Plaintiff rejected a

33

reasonable offer of judgment for $50,000.  Plaintiff's Counsel cannot be exorbitantly rewarded for what at best is a minimal success.

## IV.

## CONCLUSION

For the foregoing reasons, Defendant Diamond Contract Services, Inc. respectfully requests that the Court issue an Order once again denying Plaintiff's Counsel's request for attorney's fees in its entirety, or, at a minimum, substantially reduce Plaintiff's Counsel fees to two times Plaintiff's actual judgment from the jury because that is what is fair and just given Plaintiff's minimal success. Plaintiff's Counsel should not be exorbitantly awarded for what is a minimal success at best.

Dated: April 9, 2012                    Respectfully Submitted,

WILLOUGHBY & ASSOCIATES


By: _____
Jason J. Buccat, Esq.
Attorney for Defendant
Diamond Contract Services, Inc.